## 55985. INTERNATIONAL INDUSTRIES, INC. v. DANTONE et al.

McMURRAY, Judge.

In 1968, Futch, the owner of certain real estate, entered into an agreement with IHOP Corp. of Piedmont (IHOP), a wholly owned subsidiary of International Industries, Inc., whereby IHOP agreed to construct a restaurant on Futch's property, and Futch agreed to pay $75,000 of the construction costs of the building and to lease the restaurant location to IHOP for a period of 20 years with options for extensions. On April 15, 1969, the finalized lease agreement which is the subject matter of this action was entered into between Futch and IHOP. Soon thereafter the construction of the restaurant building was complete, and Futch paid his $75,000 share for the construction of the building. IHOP subsequently merged with its parent corporation, International Industries, Inc., which succeeded to IHOP's rights under the lease agreement.

In the fall of 1973 inspection by International Industries, Inc. revealed damage to the restaurant building caused by building movement. Several engineering studies and surveys resulted during the following months.

On July 15, 1974, the property was conveyed by Futch to Hinson, Thomas and Eriksson. The same day they conveyed the property to Dantone. In August of 1974, International Industries, Inc. made demands upon Dantone and the preceding owners for repair of the property in accordance with the lease agreement. International Industries, Inc. continued to conduct engineering studies of the movement of the building, made necessary cosmetic repairs, and after receiving an engineering report dated January 26, 1977, from Law Engineering Testing Company, declared that the

building was not safe in its then present condition. It advised Dantone that due to these findings it was terminating the lease, and then vacated the building by January 30, 1977.

This action was begun as a declaratory judgment action in April 1975, to clarify the rights of International Industries, Inc. under the lease agreement dated April 15, 1969. Prior to any ruling on the prayer for declaratory judgment, plaintiff declared its obligations under the lease terminated and vacated the building. It then amended its complaint to omit the prayer for declaratory judgment and sought damages from Futch, Hinson, Thomas, Eriksson and Dantone for the injuries which plaintiff suffered as the result of the refusal of defendants to take any action to repair or remedy the condition existing in the leased premises, and its expenses incurred as a result of plaintiff having to relocate the restaurant located in the building.

Defendant Dantone filed a motion for summary judgment and defendants Hinson, Thomas and Eriksson filed their joint motion for summary judgment. Defendant Futch did not file a motion for summary judgment.

The trial court granted the motions for summary judgment of defendants Dantone, Hinson, Thomas and Eriksson, finding that the restaurant building was constructed in accordance with specifications prescribed by plaintiff and subject to its direction, supervision and approval. The trial court stated: "Plaintiff-Lessee must bear the burden of any defects in its own creation, notwithstanding that title, in a purely technical and reversionary sense, is vested in Defendants-Lessors." Plaintiff appeals, contending that the trial court erred in granting defendants' motions for summary judgment because the grant of summary judgment was not supported by any facts in the record, and there are genuine issues of material fact remaining. *Held:*

In the absence of ambiguities, the construction of contracts is a question of law for the court. Code § 20-701; *Carsello v. Touchton,* 231 Ga. 878, 880 (1) (204 SE2d 589); *American Fruit Purveyors, Inc. v. Avis Rent-A-Car Systems, Inc.,* 118 Ga. App. 840, 842 (165 SE2d 879). The contract in question here states that "[l]essee shall, at its

own cost and expense, maintain the demised premises...in good order and condition." This provision is consistent with Code § 85-805 which states that "[a] tenant for years is bound for all repairs or other expense necessary for the preservation and protection of the property." See *Ginsberg v. Wade,* 95 Ga. App. 475, 478 (2) (97 SE2d 915).

Paragraph 13 of the contract relates to destruction of the building. Provisions are made under this paragraph for various combinations of events such as damage to the building which does not render the building wholly unfit for use and which is covered by insurance; but, as plaintiff admits in its brief, no specific provision is made in paragraph 13 for those uninsured damages where there is no determination that the building is wholly unfit for further use.

Part A in Paragraph 13 states that where damage occurs which does not render the building wholly unfit for use and which damage is covered and insured against by extended coverage fire insurance required under the terms of the lease that the lease shall remain in full force and effect. Part B of Paragraph 13 delineates the responsibilities of the parties under several sets of circumstances where the building is so badly damaged as to render the building wholly unfit for use. The lessee is authorized to terminate the lease by giving 30 days notice no later than 30 days following the damage. If the lessee fails to give such notice and the cause of the damage is covered by the extended coverage fire insurance and if the event occurred prior to the expiration of the 10th year of the term of the lease and the building can be repaired for the amount of the insurance proceeds, the lessor is obliged to repair. If the damage occurs prior to the expiration of the 10th year of the lease and the building cannot be repaired for the amount of the net proceeds of the insurance, the lessor may repair or may choose not to repair. If the lessor chooses not to repair he is required to give written notice thereof to the lessee. In this event the lessee may elect to pay the difference between the insurance proceeds and the cost of repair rather than have the lease terminate. Further provisions delineate the relative rights of the parties where the damage rendering the building wholly unfit for use occurred after the

expiration of the 10th year of the term of the lease.

The plaintiff would have us construe Paragraph 13 so as to extend the option of the lessee to terminate the lease where the building is rendered wholly unfit to situations such as this where the damage does not render the building wholly unfit for use. This cannot reasonably be construed to be the intention of the parties, and such a construction would allow the lessee to terminate the lease upon any minor damage to the building. Further, the construction urged by plaintiff is inconsistent with its status as a holder of an estate for years and with the general provisions of the contract which renders the lessee responsible for repairs.

Plaintiff was responsible for maintaining the premises in good order and condition during the period of time in which the various cosmetic repairs and engineering surveys were conducted. These were the proper responsibility of the plaintiff, and defendants are not liable for these repairs. After a lapse of time when the building had reached such a state that it was unsafe for further use, plaintiff acted pursuant to the contract and terminated the lease. The defendants were not responsible for any repairs which could have prevented the deterioration of the condition of the restaurant building and avoided this termination of the lease; therefore, they are not liable for expenses in relocating plaintiff's restaurant. There are no material issues of fact, and the defendants are entitled to judgment as a matter of law. The trial court did not err in entering judgment for defendants. *Carsello v. Touchton,* 231 Ga. 878, supra; *Summer-Minter & Assoc. v. Giordano,* 231 Ga. 601, 603 (203 SE2d 173); *Johnson v. Lanier,* 140 Ga. App. 522, 523 (1) (231 SE2d 428).

*Judgment affirmed. Quillian, P. J., and Webb, J., concur.*

ARGUED JUNE 8, 1978 — DECIDED SEPTEMBER 21, 1978 —

*T. Jackson Bedford, Jr.,* for appellant.
*Gershon, Ruden, Pindar & Olim, Max Olim, Thomas*

*F. Choyce, Sam G. Dettelbach, Charles Hayden,* for appellees.