52001. McMULLEN et al. v. VAUGHAN et al.

MARSHALL, Judge.

This is an appeal from a jury verdict and judgment in favor of Dr. Vaughan, defendant below, against the plaintiff McMullen, and the joint suit of McMullen's wife for loss of consortium, in an action alleging medical malpractice. McMullen and wife enumerate as error the giving by the trial court of a charge on comparative negligence and the failure to give two requested charges based upon the doctrine of "informed consent" as it related to the injury-producing surgical procedure.

The facts established that Mr. McMullen was experiencing a nerve impairment. Following consultation with an orthopedic surgeon, McMullen submitted to a surgical procedure to correct the impairment performed by appellee, a thoracic surgeon. During the operation, an unrelated motor nerve apparently was damaged causing paralysis to a muscle

controlling the scapula, the "shoulder blade." The evidence established the injury to the nerve was not painful and had minimal effect on the mobility of the shoulder itself. Expert testimony offered by appellee and not specifically rebutted by appellant established that the injury was generally recognized in the medical profession as being in the nature of an unexpected result which could occur in spite of the exercise of the requisite degree of care demanded during such surgery. The muscle paralysis did not involve the shoulder joint and did not, of itself, limit shoulder motion. There was evidence that several contiguous muscles to that paralyzed would compensate for the loss of function and control the scapula as effectively as the paralyzed muscle. Upon assumption by the contiguous muscles of that functional control, a patient would have a normal appearance and experience complete control of the shoulder.

A serious post-operative complication of the particular operation involved is a "frozen shoulder." This results from extended disuse of the shoulder and causes pain and disability. To offset this risk a patient is given a series of self-controlled physical therapy exercises. If for any reason the patient is unable or unwilling to countenance or voluntarily perform these exercises, the patient is medicated sufficiently to allow him voluntarily to perform the shoulder movements or if necessary the patient is referred to a physical therapist to force the continued movement of the shoulder joint. There was evidence that the particular operation, a first rib resection, normally produced significant post-operative pain, causing a patient to "favor" the shoulder and instinctively to limit shoulder movement. McMullen apparently fearing drug dependence deliberately limited his ingestion of pain-deadening medication following the operation.

Evidently as a result of the intense pain and the continued "favoring" of his arm, appellant incurred a "frozen shoulder." Though referred by Dr. Vaughan, McMullen went only once to a physical therapist. Appellant did not return for follow-up visits. Appellant presently suffers constant and severe pain and the mobility of the arm and shoulder is significantly

curtailed. The disability is considered to be permanent.

Appellant brought this suit seeking damages for the paralysis in his right arm and side and shoulder area together with accompanying pain and suffering. *Held:*

1. The resolution of the questions presented by this appeal ultimately depend upon the nature of specific injury of which complaint is made and for which damages were sought. Though, it is uncontested that as a direct product of the surgical procedures followed by Dr. Vaughan, the thoracic nerve was damaged resulting in paralysis of the scapula muscle, we conclude this is not the underlying basis of appellant's suit. The overall tenor of appellant's evidence makes manifest his complaint is based upon the pain and limitation of motion caused by the frozen shoulder and not based exclusively upon the paralysis of the scapula muscle and consequent winging of the scapula.

2. In substance appellants complain in their first enumeration of error that the trial court based its charge on an erroneous premise. They maintain that the facts did not raise an issue of comparative negligence since a patient has no control over surgical procedures while under general anesthesia. If there is post-operative negligence by a patient, appellants insist the proper doctrine is that a patient must take all necessary and reasonable steps to minimize his injury. Thus the argument proceeds that the correct theory is one of diminution of damages, not comparative negligence.

Under the facts of this case, such a theory is not tenable. Appellants are asserting that the frozen shoulder would not have occurred except for the negligent injury to the thoracic nerve. The overwhelming evidence is that the frozen shoulder resulted ultimately from nonuse of the arm and shoulder and was not proximately caused by the damage to the thoracic nerve. It is axiomatic that all persons are required to exercise ordinary care for their own well-being. *Ga. Northern R. Co. v. Dalton,* 133 Ga. App. 34, 37 (209 SE2d 669). Where the evidence raises an issue of whether negligence by the plaintiff joins with the negligence of the defendant in proximately causing the injury of which plaintiff complains, the doctrine of comparative negligence applies and will reduce or negate

the amount of recovery, depending upon the balance of negligence of the plaintiff against that of the defendant. *Whatley v. Henry,* 65 Ga. App. 668 (16 SE2d 214). Under the pleadings and facts of this case, it was not error for the trial court to give to the jury a charge upon the law of comparative negligence. *McLendon v. Daniel,* 37 Ga. App. 524, 528 (1) (141 SE 77).

3. In their remaining enumerations of error, appellants complain that the trial court erred in refusing to charge that Dr. Vaughan was negligent in failing to inform Mr. McMullen of the dangers inherent in a first rib resection (2), and in not informing Mr. McMullen of alternative and less dangerous modes of treatment and correction (3).

These enumerations in essence seek the application of the "informed consent" rule to the facts of this case. Until 1971 there was some question as to whether the "informed consent doctrine" was applicable in Georgia. See *Mull v. Emory University, Inc.,* 114 Ga. App. 63, 65 (5) (150 SE2d 276). That year the General Assembly enacted the Georgia Medical Consent Law (Ga. L. 1971, pp. 438, 440, Code § 88-2906). In *Young v. Varn,* 136 Ga. App. 737 (222 SE2d 113), this court held that the legislature established a physician's duty of disclosure to his patient as including the necessity to inform the patient of the general terms of treatment in order to effect a valid consent. This duty does not include a disclosure of "risks of treatment," consequently the "informed consent doctrine" is not a viable principle of law in this state. *Kenney v. Piedmont Hospital,* 136 Ga. App. 660, 667 (222 SE2d 162).

Requests to charge standing alone must be correct as an abstract principle of law, even perfect, and precisely adjusted to some principle involved in the case. If any portion of the request is inapt or incorrect, denial of the request is proper. *Shannon v. Kaylor,* 133 Ga. App. 514, 516 (211 SE2d 368). A fortiori, a request for a charge based upon an improper legal standard is properly refused. *Hiever v. Watt,* 119 Ga. App. 5 (165 SE2d 899).

*Judgment affirmed. Pannell, P. J., and McMurray, J., concur.*

ARGUED APRIL 7, 1976 — DECIDED MAY 7, 1976 —
REHEARING DENIED MAY 21, 1976 —

*Moore & Worthington, Samuel W. Worthington, III,
William C. Moore, Ross & Finch, Claude R. Ross,* for
appellants.

*Kelly, Champion, Denney & Pease, S. E. Kelly, Philip
J. Johnson,* for appellees.